IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| ERIN CALVERT, )  )  Plaintiff, )  ) v. )  ) STATE FARM FIRE AND CASUALTY ) COMPANY, )  ) Defendant. ) | ) Civil Action No. 5:12cv00017 ) ) By:  Michael F. Urbanski ) United States District Judge |

## MEMORANDUM OPINION

Before the court is defendant State Farm Fire and Casualty Company's ("State Farm") **Motion to Dismiss (Dkt. #2)**, in which State Farm seeks to dismiss the claims brought by plaintiff Erin Calvert.  This matter has been fully briefed, and the court heard oral argument on May 8, 2012.  Calvert's claim is clearly barred by the statute of limitations, and her arguments that the State Farm policy at issue is ambiguous are unavailing.  Calvert now claims that the statute of limitations should be tolled due to her incapacity in the years between the voluntary non-suit of her first state lawsuit and the filing of the removed complaint in this case.  The court believes that the record needs further development on the incapacity issue.  Accordingly, the court will deny the motion to dismiss based on Calvert's claim of incapacity at this time, and will give the parties sixty (60) days to develop evidence on this limited issue.  The parties are directed to file summary judgment motions and briefs by September 10, 2012, and reply briefs by September 24, 2012, limited to the issue of Calvert's incapacity.  An evidentiary hearing is set on the issue of Calvert's claimed incapacity on October 4, 2012, at 1:00 p.m. in Harrisonburg.

**I.**

This case involves a breach of contract claim, filed by Calvert, to a homeowner's insurance policy that was removed from state court and is before this court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. The dispute arises out of a fire at Calvert's residence on March 31, 2006, and her subsequent attempts to receive insurance coverage from State Farm for repairs to that property pursuant to her homeowner's insurance policy. Calvert filed the instant action in state court on March 30, 2011, asserting four causes of action. She has since voluntarily dismissed all but her breach of contract claim, for which she seeks a judgment of $187,417.57, plus reasonable attorney's fees and costs pursuant to state statute.

On May 27, 2005, Calvert purchased residential property in Manassas, Virginia, for $500,000 and contracted with State Farm to insure the property. Pursuant to the contract, State Farm issued homeowner's insurance policy 46-K9-2113-2 ("the Policy"), which provided insurance coverage for specified losses during the policy period from May 27, 2005, to May 27, 2006.

On March 31, 2006, the fire that is the subject of this litigation occurred at Calvert's property. Calvert notified State Farm of the fire and requested substitute housing for her family. A few days later, State Farm sent an adjuster and a contractor to inspect the property, and on April 5, 2006, State Farm's contractor commenced repairs to the property. State Farm allegedly informed Calvert that it did not believe substitute housing was necessary, and the contractor reactivated electricity to the property to allow Calvert and her family to reoccupy the home. On April 7, 2006, per Calvert's request, the Prince William County Department of Public Works inspected the property, found it unsafe for habitation, and revoked the occupancy permit. Later in April 2006, Calvert hired legal counsel.

Between the dates of May 18 and May 22, 2006, State Farm provided Calvert with an estimate stating that the property could be repaired for $20,507.74. This amount was reduced by $1,000 for the deductible applicable under the Policy, and State Farm tendered a check to Calvert for $19,507.74. State Farm also tendered a second check for $13,800.00 as a partial payment to cover Calvert's substitute living expenses, but Calvert alleges this amount was insufficient.

On July 26, 2006, Calvert provided State Farm with an independent third-party contractor's estimate showing that the cost to complete repairs to the property would be $300,000.00. Calvert alleges that State Farm failed to respond despite numerous telephone messages and letters over the next couple of months. In September 2006, Calvert sent State Farm a certified letter with three independent third-party contractor estimates showing the cost to complete repairs to the property would be $267,500.00, $305,900.00, and $317,000.00, respectively. Calvert also detailed her out-of-pocket expenses for substitute housing, lost rental income, and damage to personal property. Calvert alleges that State Farm once again failed to respond.

On November 22, 2006, Calvert filed her initial lawsuit against State Farm in the Circuit Court of Shenandoah County. Calvert voluntarily non-suited this initial lawsuit on April 10, 2008, and alleges that she was unable to pursue the litigation because of stress-related health reasons and general incapacity.

On May 9, 2008, State Farm made an additional payment to Calvert of $94,619.54 based on a repair estimate prepared in the summer of 2007 during Calvert's initial lawsuit. Calvert alleges that these funds were insufficient to repair the property and that no funds were paid to cover her substitute living expenses or lost rental income.

On January 17, 2011, Calvert's counsel contacted State Farm by letter, again identifying the insufficiency of the State Farm payments to date, and itemized an additional $187,417.57 in charges that were due and payable under the Policy.  State Farm replied in early February 2011 denying additional payments under the Policy.

Calvert filed her second lawsuit against State Farm in the Circuit Court of Shenandoah County on March 30, 2011.  This was four years and 364 days after the date of the March 31, 2006, fire loss that forms the basis of this lawsuit.  State Farm removed the second lawsuit to this court based on diversity jurisdiction in February 2012.

## II.

In its motion to dismiss, State Farm argues that Calvert is unable to state a plausible claim for breach of contract as a matter of law because her claim is barred by the two-year limitations period prescribed by the Policy and mandated by Virginia Code § 38.2-2105(A).  The contractual limitations period at issue appears in the "Conditions" section of the Policy and states as follows:

> **Suit Against Us.**  No action shall be brought unless there has been compliance with the policy provisions.  The action must be started within two years after the date of loss or damage.

The Policy, "Section I – Conditions," Dkt. # 3, Ex. 1, p. 18.  Section 38.2-2105(A) provides the standard provisions, conditions, stipulations, and agreements that must be included in all fire insurance policies in Virginia and states as follows:

> **Suit.**  No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within two years next after inception of the loss.

Va. Code Ann. § 38.2-2105(A).  State Farm asserts that the fire at Calvert's property occurred on March 31, 2006, but this lawsuit was not filed until March 30, 2011, which is plainly longer than

4

two years after the date of the fire.  According to State Farm, Virginia courts have strictly applied this statutory time bar in cases where, as here, an insured fails to bring an action under the policy within the two-year limitations period.

In her memorandum in opposition, Calvert argues that the two-year limitations period does not apply to Calvert's breach of contract claim because State Farm substantially modified the statutory language in § 38.2-2105(A) when drafting the Policy's similar provision.  Calvert asserts that State Farm's use of the word "action" instead of the words "suit or action" eliminates any requirement that the insured file "suit" or that the insured bring an action in a "court of law or equity."  Instead, the Policy only requires that an insured "start" an "action" within the two-year limitations period, which begins to run from "the date of the loss or damage."  Calvert notes that the words "action" and "started" are not defined in the Policy.  Moreover, because § 38.2-2105(A) uses the phrase "suit or action," it is reasonable to assume that the Virginia legislature intended those words to have different meanings.  According to Calvert, these modifications to the language of § 38.2-2105(A) lead to multiple reasonable interpretations of the Policy's provision that make it ambiguous and unenforceable.  The fact that the applicable section in the Policy is entitled "Suit Against Us" does not eliminate this ambiguity.  Thus, Calvert asserts that the two-year statute of limitations does not apply and, instead, the general five-year statute of limitations period for breach of written contracts set forth in Virginia Code § 8.01-246 applies to this case, making Calvert's breach of contract claim timely.

If the two-year limitations period applies, Calvert argues that any statute of limitations period should be tolled due to her incapacity between the time she voluntarily dismissed her initial lawsuit on April 10, 2008, until she filed her second, and current, lawsuit on March 30, 2011.  Calvert asserts that she has adequately alleged her incapacity in the complaint and that she

has a statutory right to have a jury decide the incapacity issue.  To the extent the court finds that her allegations are insufficient to invoke the statutory tolling provisions, Calvert requests leave to amend her complaint to more fully set forth such allegations.

In its reply memorandum, State Farm reasserts that Calvert's breach of contract claim is clearly barred by the contractual and statutory two-year limitations period and her arguments are unsupported by the plain language of the Policy and Virginia law on the issue.  State Farm argues that the Policy's limitations provision is plain, unambiguous, and susceptible of only one reasonable interpretation—namely, that any action on the Policy must be initiated within two years of the fire loss.  The terms "action" and "suit" are used interchangeably in § 38.2-2105(A) and in the Policy and have the same meaning.  See Va. Code Ann. § 8.01-2(1) (defining both terms to "include all civil proceedings whether upon claims at law, in equity, or statutory in nature and whether in circuit courts or district courts").  Moreover, the language used by State Farm in the Policy was approved by the Virginia State Corporation Commission ("the Commission") prior to the fire loss in this case.  State Farm further asserts that even if the Policy's limitations provision is ambiguous and unenforceable, the default statute of limitations period for claims related to fire insurance policies is two years in Virginia, pursuant to § 38.2-2105(A), not the five-year period proposed by Calvert.

Regarding Calvert's contention that any statute of limitations should be tolled for her incapacity, State Farm argues that Calvert's complaint is devoid of factual allegations meeting the requirements for incapacity, and her interactions with State Farm during this insurance dispute indicate that, although stressed, she is fully capable.  According to State Farm, amendment of Calvert's complaint to include factual allegations of incapacity would be futile because no sufficient facts exist to support such a claim.

### III.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter which, accepted as true, "state[s] a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Id. When ruling on a motion to dismiss, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). While the court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

### IV.

While sitting in diversity, a federal court must apply the substantive law of the state in which the action arose. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Because the court is exercising diversity jurisdiction over this action, the Virginia statute of limitations on fire insurance claims applies. Hitt Contracting, Inc. v. Indus. Risk Insurers, 258 Va. 40, 47, S.E.2d 216, 219 (1999) (holding fire insurance policy protecting property in Virginia must incorporate § 38.2-2105). As described above, § 38.2-2105(A) provides the standard provisions, conditions, stipulations, and agreements that must be included in all fire insurance policies in Virginia and states in relevant part:

7

>**Suit.** No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within two years next after inception of the loss.

§ 38.2-2105(A). Virginia Code § 38.2-2105(B) further provides that "[n]o change shall be made in the sequence of the words and paragraphs of the standard provisions, conditions, stipulations and agreements prescribed by this section . . . ."  However, an insurer can deviate from the standard policy language if the language is no less favorable than the standard language and is approved by the Commission before the policy is issued.  Va. Code Ann. § 38.2-2107(A).[1]  The general statute of limitations period for breach of written contracts is five years as set forth in § 8.01-246.

## V.

In its motion to dismiss, State Farm asserts that Calvert's breach of contract claim is barred by the contractual and statutory two-year limitations period set forth in § 38.2-2105(A) and included in the Policy.  Calvert claims State Farm substantially modified the statutory language, making the Policy ambiguous and unenforceable.  Thus, the general five-year statute of limitations period for breach of written contracts should apply rather than the two-year limitations period, and Calvert's claim is therefore timely.

Hitt Contracting, Inc. v. Industrial Risk Insurers, the seminal case on the application of § 38.2-2105(A), states that claims brought under a fire insurance policy in Virginia are subject to the statute's two-year limitations period.  258 Va. at 43, S.E.2d at 217 (holding that "[b]ecause the policy covers property in Virginia and insures against the peril of fire, it necessarily includes the mandatory provisions enumerated in Code § 38.2-2105").  The issue in Hitt Contracting was

---

[1] "An insurer may issue a simplified and readable policy of insurance that deviates in language from the standard policy form provided for in § . . . 38.2-2105 . . . if the deviating policy form is (i) in no respect less favorable to the insured than the standard policy form, and is (ii) approved by the Commission prior to issuance."  § 38.2-2107(A).

8

"whether a suit for failure to pay a claim under a replacement coverage endorsement of an insurance policy is subject to the two-year limitations period contained in the policy and required by Code § 38.2-2105."  Id. at 42, S.E.2d at 216.  The insurance policy in the case was a "Standard Fire Insurance Policy," and because it covered property in Virginia and insured "against the peril of fire, it necessarily include[d] the mandatory provisions enumerated in Code § 38.2-2105."  Id. at 43, S.E.2d at 217.  The policy stated that a suit to recover a claim under the policy must be "commenced within two years next after inception of the loss."  Id. at 44, S.E.2d at 217.

The Virginia Supreme Court held that the two-year limitations period applied to the insurance policy at issue and that the plaintiffs' claims were time-barred.  Id. at 45, S.E.2d at 217-18.  Even though the insurance policy provided broader coverage than that provided by standard fire insurance coverage, the court held that "the mere fact that this policy provides coverage for other perils in addition to fire, and provides for insurer liability on a basis other than actual cash value, [as is generally done in standard fire insurance policies,] does not mean that it is not subject to the 'standard' provisions required in a fire insurance policy . . . ."  Id. at 44, S.E.2d at 217.  The court found that "nothing about the policy exempts it from the mandatory provisions of Code § 38.2-2105.  Therefore, the two-year statute of limitations mandated by Code § 38.2-2105 applies to this policy."  Id. at 45, S.E.2d at 218.  Thus, even though the insurance policy provides additional endorsement replacement cost coverage and different procedures for this avenue of recovery, the court held that the General Assembly intended for the two-year limitations period to apply to replacement cost coverage.  Id. at 45-46, S.E.2d at 218-19.  Moreover, the fact that the two-year limitations period may exclude recovery for certain damages did not sway the court.

> [T]he possibility that in certain circumstances an insured might not be able to recover replacement costs incurred near or at the end of the two-year limitations period does not change the plain language of Code § 38.2-2105 and of this policy. By requiring every policy of fire insurance covering property in Virginia to contain all the provisions contained in Code § 38.2-2105, the General Assembly indicated the importance it attached to these provisions.

Id. at 47, S.E.2d at 219. The court concluded as follows:

> The limitation involved in the present case is not in the language of the insurance company. It is in the language of the General Assembly and expressed in words which the statute required to be inserted in the policy, word for word, line for line, number for number. It says in plain, unambiguous words that no suit shall be sustainable unless it is commenced within [two years] next after the inception of the loss.

Id. (quoting Ramsey v. Home Ins. Co., 203 Va. 502, 506, 125 S.E.2d 201, 204 (1962).[2]

In Coker v. State Farm Fire and Casualty Company, No. 161002, 45 Va. Cir. 510, 1998 WL 972219 (Fairfax Co. Cir. Ct. June 4, 1998), a severe fire damaged the plaintiff's home, but she did not initiate an action against the insurance company until almost three years later. Id. at *2. The insurance company argued that the action was time-barred by the two-year statute of limitations under § 38.2-2105(A). Id. The plaintiff's insurance policy contained a limitations provision that modified the statutory language of § 38.2-2105(A) and stated as follows:

> **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions. The action must be started within two years after the date of the loss or damage.

Id. The court noted that this language was approved by the Commission as required by Virginia Code § 38.2-2107. Id. at *3 n.4. The plaintiff argued that the modifications to the statutory language created ambiguity in the terms of the policy, specifically regarding the inclusion of the word "damage," its meaning as compared to the statutory word "loss," and the effect of this modification on the calculation of the two-year limitations period. Id. at *2. The court,

---

[2] The full text of the relevant insurance policy provision in Hitt Contracting is not quoted by the court in the opinion, but it appears that the policy provision mirrored the statutory language of § 38.2-2105(A) word for word.

10

however, rejected the plaintiff's argument, stating that § 38.2-2107 "permits insurance companies to use simplified language that deviates from the standard Va. Code [§] 38.2-2105 policy language as long as the simplified terms are no less favorable to the insured." Id. at *5. Thus, the court found that the terms "damage" and "loss" had the same meaning, so "the inclusion of the phrase 'or damage' in the limitation provision of the policy" did not create additional rights for the plaintiff. Id.

In Whitaker v. Nationwide Mutual Fire Insurance Company, 115 F. Supp. 2d 612 (E.D. Va. 1999), the United States District Court for the Eastern District of Virginia reached a similar conclusion as the court in Coker. In that case, the plaintiffs were constructing a home and obtained an "all-risks" homeowner's insurance policy. Id. at 614. The plaintiffs filed suit against the insurance company when their claim for alleged faulty construction of the home went unpaid. Id. at 614-15. In a motion for summary judgment, the insurance company argued the plaintiffs' claim was time-barred by the insurance policy's two-year statute of limitations. Id. at 617. The policy stated that "[n]o action can be brought unless there has been compliance with the policy provisions and the action is started within two years after the date of loss or damage." Id. The court rejected the plaintiffs' ambiguity arguments and held that "[a]llowing [p]laintiffs to claim that their 'damage' (the payment) did not occur until August 4, 1998, more than one year after their 'loss' (the defective workmanship) would allow them to impermissibly stretch the limitations period. The statutorily-mandated limitation provision should be strictly construed." Id. at 618. The court concluded, therefore, that "the date of 'loss or damage' is not the date of payment or repair, but the date any actual damage caused by the faulty construction occurred." Id.

The relevant policy language in both Coker and Whitaker is almost identical to the applicable language in Calvert's Policy. While the courts in Coker and Whitaker analyzed potential ambiguities in the terms "loss" and "damage," Calvert asserts that there is ambiguity in the Policy's term "action." Because § 38.2-2105(A) uses the phrase "suit or action," Calvert argues it is reasonable to assume that the General Assembly intended those words to have different meanings. However, Virginia Code § 8.01-2(1) states that "'[a]ction' and 'suit' may be used interchangeably and shall include all civil proceedings whether upon claims at law, in equity, or statutory in nature and whether in circuit courts or district courts." The General Assembly clearly intended these terms to be used interchangeably. Calvert also argues that a policyholder might "start" an "action" by filing a lawsuit within the two-year period, even though the suit is later voluntarily dismissed, but Virginia Code § 8.01-229(E)(3) clearly explains the provisions for tolling the statute of limitations after a voluntary non-suit.[3]

Calvert does not cite any cases specifically addressing her claims of ambiguity regarding § 38.2-2105(A) and instead relies only on cases that discuss general principles of contractual and statutory interpretation, as well as one overruled case presented at oral argument regarding ambiguity in a contractual limitations clause, to support her argument.[4] Calvert's position is further weakened by the fact that she has been represented by counsel since April 2006, one

---

[3] "If a plaintiff suffers a voluntary non-suit as prescribed in § 8.01-380, the statute of limitations with respect to such action shall be tolled by the commencement of the non-suited action, and the plaintiff may recommence his action within six months from the date of the order entered by the court, or within the original period of limitation, or within the limitation period as provided by subdivision B 1, whichever period is longer." Va. Code Ann. § 8.01-229(E)(3).

[4] At oral argument, counsel for Calvert referred the court to Dominish v. Nationwide Ins. Co., No. 2009-L-116, 2010 WL 2636832 (Ohio Ct. App. June 30, 2010). In Dominish, the Court of Appeals of Ohio reversed a lower court's ruling on the ambiguity of insurance policy language similar to the language in this case and held that the limitation of action provision, stating that "'[a]ny action must be started within one year after the date of loss or damage,'" was "ambiguous." Id. at *4. This ruling is unpersuasive, however, because the appellate court was not applying statutorily-mandated language, and the Supreme Court of Ohio reversed the appellate court's ruling and held that the policy's limitation of action provision was enforceable. See Dominish v. Nationwide Ins. Co., 129 Ohio St. 3d 456, 953 N.E.2d 820 (Ohio 2011).

month after the fire that is the subject of this litigation, and therefore has had assistance of such counsel in interpreting the applicable clause of the Policy at all stages of this dispute.

The terms "suit" and "action" are interchangeable and do not create ambiguity in the Policy. Section 38.2-2105(A) mandates that all fire insurance policies are subject to a two-year period of limitations. The Policy included this mandatory provision, and the Commission approved the Policy's language prior to Calvert and State Farm's contract to insure the relevant property.[5] Thus, the court finds that the appropriate statute of limitations period in this case is two years from the date of loss, which, according to Whitaker, was the date of the fire on March 31, 2006. Absent any other reasons for tolling, because Calvert filed her initial lawsuit on November 22, 2006, she had a little more than sixteen months from the date she voluntarily non-suited that action on April 10, 2008, to file her second action. The March 30, 2011, filing of her second lawsuit that is currently before this court is far more than sixteen months after April 10, 2008. Calvert's claim for breach of contract, therefore, is untimely.

## VI.

In the alternative, Calvert argues that, due to her alleged incapacity, the Policy's mandatory two-year limitations period should be tolled from the time she voluntarily non-suited her initial lawsuit until she filed her second, and current, action, thus making her current action timely. Calvert further asserts a statutory right to a jury determination on the issue of her incapacity and requests leave to amend her complaint if the court finds that her allegations of incapacity are inadequate.

Virginia Code § 8.01-229 is the state's general tolling statute, which governs the tolling of any statute of limitations due to disability, and incapacity is considered a disability for tolling

---

[5] As mentioned above, an insurer may deviate from the statutory language if it is no less fair to the insured and is approved by the Commission before the policy is issued. § 38.2-2107(A).

13

purposes. See Va. Code Ann. § 8.01-229(A)(1) and (2)(b). Once a cause of action accrues, the statute provides as follows:

> If a person entitled to bring such action becomes incapacitated, the time during which he is incapacitated shall not be computed as any part of the period within which the action must be brought, except where a conservator, guardian or committee is appointed for such person in which case an action may be commenced by such conservator, committee or guardian before the expiration of the applicable period of limitation or within one year after his qualification as such, whichever occurs later. . . . [A] person shall be deemed incapacitated if he is so adjudged by a court of competent jurisdiction, or if it shall otherwise appear to the court or jury determining the issue that such person is or was incapacitated within the prescribed limitation period.

§ 8.01-229(A)(2)(b). This section of the Virginia Code does not provide a definition of "incapacity;" however, the section of the Virginia Code governing guardianship and conservatorship contains an applicable definition.

> "Incapacitated person" means an adult who has been found by a court to be incapable of receiving and evaluating information effectively and responding to people, events, or environments to such an extent that the individual lacks the capacity to (i) meet the essential requirements for his health, care, safety, or therapeutic needs without the assistance or protection of a guardian or (ii) manage property or financial affairs or provide for his support or for the support of his legal dependents without the assistance or protection of a conservator. A finding that the individual displays poor judgment alone shall not be considered sufficient evidence that the individual is an incapacitated person within the meaning of this definition.

Va. Code Ann. § 37.2-1000. Although this definition of "incapacity" is not binding when interpreting the tolling provisions of § 8.01-229, courts have found it persuasive because Virginia Code §§ 8.01-229(A)(2)(b) and 37.2-1000 both reference conservators and guardians. Sisk v. Commonwealth, 56 Va. Cir. 230, 2001 WL 34038010, at *2 (Charlottesville Cir. Ct. June 15, 2001) (holding that even though § 8.01-229 does not specifically reference and incorporate the definition of "incapacity" under § 37.2-1000, the definition, which is "included in a chapter which defines the criteria for appointment of committees and trustees," is "particularly

14

persuasive because the language of . . . § 8.01-229 also references committees and other guardians").

### A. Calvert's Demand for a Jury Determination on the Incapacity Issue

Pursuant to § 8.01-229, Calvert asserts a statutory right to a jury determination on the issue of her incapacity. As described above, § 8.01-229 states, in relevant part, that "a person shall be deemed incapacitated if he is so adjudged by a court of competent jurisdiction, or if it shall otherwise appear to the court or jury determining the issue that such person is or was incapacitated within the prescribed limitation period." § 8.01-229(A)(2)(b). The plain language of the statute does not support Calvert's assertion and clearly provides that the court can determine issues of incapacity within the context of § 8.01-229.

In Hughley Basham, No. 2:03-cv-85, 2003 WL 24101521 (E.D. Va. Aug. 1, 2003), aff'd, No. 03-7315, 91 F. App'x 273 (4th Cir. Mar. 23, 2004), a prisoner filed a claim against a correctional center and asserted that the statute of limitations should be tolled pursuant to § 8.01-229 because he was incapacitated due to his incarceration and blindness. Id. at *3-5. The prisoner further argued that only a jury could determine the incapacity issue. Id. at *3 n.3. The court did not agree, stating that "[p]laintiff cites no caselaw to support his proposition. Moreover, . . . [t]he plain language of the statute provides that the [c]ourt or the jury may make such determination. Accordingly, the [c]ourt may make findings regarding [p]laintiff's incapacity pursuant to section 8.01-229." Id.

The language of § 8.01-229 is clear, and Calvert likewise does not cite any caselaw to support her contention that she has a statutory right to a jury determination on the issue of her incapacity. Therefore, the court finds that Calvert does not have a statutory right to a jury determination on incapacity, and the court may, and will, make this decision.

B. **Incapacity for Tolling Purposes**

Calvert alleges that she has been incapacitated since voluntarily non-suiting her initial lawsuit against State Farm on April 10, 2008, through the filing of this second, and current, action on March 30, 2011. Specifically, Calvert's complaint states that her dispute with State Farm has caused her "extreme emotional distress." Complaint, Dkt. # 1, Ex. A, p. 13, ¶ 42.

> That stress caused Ms. Calvert to become severely and clinically depressed, amplified her anxiety, and began to manifest itself in other physical illnesses including infection and removal of her appendix, infection and removal of her gallbladder, sphincter of oddi, multiple surgeries and hospitalizations, regular and ongoing medical treatments, regular and ongoing psychological treatments and prescription drug therapies, loss of employment, loss of the ability to drive a car, and general incapacity of Ms. Calvert, which continues to date.

Id. at ¶ 43. Calvert does not elaborate any further regarding her "general incapacity."[6]

Prior to 1998, § 8.01-229 allowed tolling of a statute of limitations only for infancy and insanity. Lewis v. Gupta, 54 F. Supp. 2d 611, 617 n.7 (E.D. Va. 1999) (citing Va. Code Ann. § 8.01-229 (1993)). In 1998, however, the General Assembly amended the statute to allow tolling when a plaintiff becomes "incapacitated."[7] Id. As mentioned above, "incapacity," or any variation thereof, is not defined in § 8.01-229, but a persuasive definition can be found in § 37.2-1000. Section 37.2-1000 states that an incapacitated person cannot "(i) meet the essential requirements for his health, care, safety, or therapeutic needs without the assistance of a guardian or (ii) manage property or financial affairs or provide for his support . . . without the assistance or protection of a conservator."

---

[6] The court takes note that Calvert's original complaint included claims for intentional or negligent infliction of emotional distress, and her original allegations regarding stress, illness, and incapacity appear to be made in support of those claims. In fact, the issue of incapacity for tolling purposes only arose after State Farm filed its motion to dismiss.

[7] The amendment to § 8.01-229 was part of a broad amendment replacing language in various statutes. Part of the amendment replaced such words as "incompetent," "mentally ill," "incompetency," "unsound mind," "mentally incompetent," and "insane" with "incapacity" or "incapacitated." 1997 Va. Legis. Serv. Ch. 801, S.B. No. 1038 (West).

In <u>Sisk v. Commonwealth</u>, a plaintiff injured her arm after a bad fall on state property. 2001 WL 34038010 at *1. In response to the defendant's motion to dismiss, the court had to determine whether the plaintiff had been incapacitated for purposes of tolling the statute of limitations under § 8.01-229. <u>Id.</u> at *2. After a hearing and reviewing the briefs and evidence, the court determined that because the plaintiff was able to travel, drive, hand-write her claims, and could have easily called a lawyer to file her suit within the required time period, she was not "'want of capacity.'" <u>Id.</u> at *3.

In <u>Kumar v. Glidden Company</u>, No. 2:05-CV-499, 2006 WL 1049174 (E.D. Va. Apr. 13, 2006), the defendants filed motions for summary judgment arguing that the plaintiff's personal injury claims were barred by the statute of limitations. <u>Id.</u> at *1. As in <u>Sisk</u>, the court had to determine whether the statute of limitations had been tolled due to the plaintiff's alleged incapacity. <u>Id.</u> The plaintiff in <u>Kumar</u> suffered from a "bevy of physical and mental conditions," including musculoskeletal aching, reproductive abnormalities, toxic encephalopathy, peripheral neuropathy, reactive airway disease, severe degenerative bone, disc, and joint disease, and arthritis of her spine. <u>Id.</u> at *1-2. She also suffered from several neurological symptoms, including impaired memory, "difficulty thinking clearly, getting lost, forgetfulness, muscle spasms, blurred vision, poor balance, numbness, and tremor." <u>Id.</u> at *1. The plaintiff suffered from panic disorders along with being diagnosed as bi-polar/manic depression, had spent time in mental health institutions, and was hospitalized as a result of suicide attempts. <u>Id.</u> at *2. She could not work, drive a car, had a history of alcohol addiction, and had to depend on family to help her with chores and some of her finances. <u>Id.</u> at *2, *6-7. Despite all of these physical and mental conditions, the court did not find the plaintiff to be

incapacitated for tolling purposes because she was able to "conduct her own affairs, to work,[8] and to raise her children . . . ." Id. at *9. The court also noted that the plaintiff had been involved in another, similar litigation and "had ample opportunity to approach a lawyer who was already intimately involved with a case regarding the same subject matter." Id. at *7.

In this case, there is no evidence in the record that any court has adjudged Calvert to be incapacitated from the time of her voluntary non-suit on April 10, 2008, until the second filing of her lawsuit on March 30, 2011. While Calvert has suffered from a myriad of ailments, the allegations in her complaint are inadequate for the court to find her to be incapacitated during the relevant time period. There is nothing in the complaint or in the record to suggest that Calvert was "incapable of receiving and evaluating information effectively or responding to people, events, or environments . . . ."[9] § 37.2-1000. Moreover, there is nothing in the complaint or in the record to suggest that she could not "meet the essential requirements for [her] health, care, safety, or therapeutic needs without the assistance or protection of a guardian . . . ." Id. Nor are there any allegations to suggest that she could not "manage property or financial affairs or provide for [her] support or for the support of [her] legal dependents without the assistance or protection of a conservator." Id.

In her complaint, Calvert claims she voluntarily non-suited her original lawsuit "as a result of stress-related health issues and other reasons." Complaint, Dkt. # 1, Ex. A, p. 12, ¶ 39. Attached to her memorandum in opposition to State Farm's motion to dismiss is an affidavit by Calvert stating that she voluntarily non-suited her original action "as a direct result of . . . incapacitation . . . ." Affidavit of Calvert, Dkt. # 11, Ex. 1, p. 2, ¶ 5. Despite these assertions,

---

[8] The plaintiff in Kumar suffered adverse consequences from exposure to chemicals in 1988 but did not stop working until 1996. 2006 WL 1049174 at *2-4.

[9] At oral argument, counsel for Calvert did state that he had trouble communicating with Calvert while she was in the hospital.

Calvert apparently was capable of "assessing her actual damages from the at-issue loss," as reflected in the spread sheet attached to her lawyer's letter to counsel for State Farm dated January 17, 2011. Letter from Calvert's Counsel, Dkt. #12, Ex. 3. Calvert's detailed assessment of her claim as reflected in the spread sheet attached to her lawyer's letter belies the suggestion that she lacked capacity. Moreover, it is worth noting that this letter nowhere mentions incapacity and that this issue was only raised once State Farm filed its motion to dismiss on the basis of the statute of limitations.

Not only does the January 17, 2011, letter fail to mention Calvert's alleged incapacity, it sheds some light on her counsel's decision to delay refiling this case until four years and 364 days after the March 31, 2006, fire loss. In the letter, Calvert's counsel states "[a]bsent our agreement on some reasonable settlement amount, it is my intention of re-filing the non-suited litigation on or before the 5-year anniversary of the at-issue loss." Id. Both from the text of the letter and the fact that the lawsuit was refiled four years and 364 days after the fire loss, it is reasonable to conclude that Calvert's counsel was operating under the mistaken assumption that a five-year statute of limitations, rather than the correct two-year limitation period, governed this case.

Absent proof of Calvert's incapacity, this case is time-barred and should be dismissed. Although very thinly pleaded, the complaint does refer to Calvert's "general incapacity." Out of an abundance of caution, therefore, the court will deny State Farm's motion to dismiss at this time on the limited basis of Calvert's claim of incapacity and give the parties sixty (60) days to conduct discovery on this narrow issue, after which the court will decide the incapacity issue on a motion under Federal Rule of Civil Procedure 56. An evidentiary hearing is set for that purpose on October 4, 2012, at 1:00 p.m. in Harrisonburg.

**VII.**

The language in the homeowner's policy issued by State Farm is clear and unambiguous, and Calvert's breach of contract claim was brought outside the statutorily-mandated two-year limitations period. Calvert alleges she was incapacitated from the time she voluntarily non-suited her original action until the re-filing of her present suit so the statute of limitations should be tolled during that period pursuant to § 8.01-229. Further evidentiary development is necessary on this issue. The parties will be given sixty (60) days to conduct discovery on this issue, and are directed to file summary judgment motions and briefs by September 10, 2012. Reply briefs are due on September 24, 2012, and an evidentiary hearing is set for October 4, 2012, at 1:00 p.m. in Harrisonburg.

**IT IS SO ORDERED**.

Entered: July 10, 2012

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge